IN THE UNITED STATES DISTRICT COURT
FROM THE MIDDLE DISTRICT OF NORTH CAROLINA

ALEXANDER SHAW, IV,                    )
                                       )
        Plaintiff,                     )
                                       )
    v.                                 )        1:04CV1039
                                       )
JOHN E. POTTER, Postmaster General,    )
UNITED STATES POSTAL SERVICE,          )
                                       )
        Defendant.                     )

MEMORANDUM OPINION

BEATY, District Judge.

This matter is before the Court on Defendant's Motion to Dismiss or in the Alternative for Summary Judgment [Document #10]. Plaintiff Alexander Shaw, IV ("Plaintiff") is a former employee of the United States Postal Service, and brings this suit alleging that he was discriminated against in violation of the Age Discrimination an Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"). Defendant John E. Potter, Postmaster General of the United States Postal Service ("Defendant") has moved to dismiss this case or for summary judgment, contending that Plaintiff has failed to establish a prima facie case of age discrimination. For the reasons discussed below, Defendant's Motion for Summary Judgment [Document #10] will be granted, and this case will be dismissed.

I.  FACTUAL BACKGROUND

Plaintiff was employed with the United States Postal Service in Greensboro, North Carolina as an electronics technician until he retired in January 2004. Sometime in 2003, Mr. Keith Murphy ("Mr. Murphy") became Plaintiff's supervisor. According to Plaintiff, Mr. Murphy "cut out all overtime" except for his "favorites." (Shaw Dep. at 34-35.) In his deposition, Plaintiff stated that he did not know why some employees received preferential assignments or overtime, but "[i]t wasn't about age or race" and might have been because "they were more agreeable with Mr. Murphy" and not so "outspoken." (Shaw Dep. at 36.) Plaintiff stated that "[n]o one liked Mr. Murphy" and that various employees filed grievances or made fun of Mr. Murphy. (Shaw Dep. at 47-48.) In August 2003, Plaintiff filed a union grievance against Mr. Murphy based on these issues of overtime assignment, favoritism, and Mr. Murphy's "extra supervision" of Plaintiff. (Shaw Dep. at 47-50.) However, Mr. Murphy did not at that time file any EEO charge or contend that any age discrimination had occurred.

In November 2003, Plaintiff was working on the "Tour 1" or "graveyard" shift. On that shift, ten electronics technicians and maintenance mechanics would work together and would be assigned to various machines or areas for cleaning or maintenance. Some of the assignments involved conveyors on the second level "which required a lot of climbing." (Shaw Dep. at 36.) Plaintiff complained about these assignments due to his "bad knee and bad back." (Shaw Dep. at 36.) According to Plaintiff, other employees also balked at those assignments because "you had to climb, and it was heavy, dirty, strenuous-type work." (Shaw Dep. at 37.) Ultimately,

2

Plaintiff submitted information from his doctors regarding his medical condition indicating that he was unable to climb due to his "bad knee and bad back." Therefore, Mr. Murphy no longer assigned Plaintiff to the machines that required climbing, and instead gave Plaintiff preferable, less strenuous assignments. (Shaw Dep. at 39.)

On November 19, 2003, one of Plaintiff's co-workers complained to Mr. Murphy that Plaintiff received these preferable assignments, leaving the other co-workers with the harder, more strenuous assignments. Specifically, Plaintiff stated that a co-worker "was complaining that I only got certain areas to work, and it's true. I was only assigned in certain areas because I was not allowed to climb, doctor's orders. It says no climbing. And so [the coworker] was upset because I kept getting lower assignments on the floor, and he was assigned to maybe - to the cleaning area." (Shaw Dep. at 43.) According to Plaintiff, the co-worker "complained about where I was working, and Mr. Murphy stated I was too old to work in another area; I had to work in this [less strenuous] area due to my complaints about my injuries. I had a lot of doctor statements about my knee and my back, and so, finally, Mr. Murphy had - Mr. Murphy had begun to assign me to less strenuous areas. So coworkers had begun to complain about where I was working and that point, I believe, caused Mr. Murphy to state that I was too old to work in certain areas." (Shaw Dep. at 39.)

Plaintiff did not directly overhear Mr. Murphy's statements to this co-worker, but another co-worker subsequently repeated the statements to Plaintiff and indicated that Mr. Murphy had said Plaintiff "was too old to do certain assignments, [he] couldn't climb anymore,

3

[he] couldn't do things that would hurt his back." (Shaw Dep. at 51.). Plaintiff contends that his coworkers then "harassed" him by complaining about his preferential assignments and making "comments about my age, my disabilities, what I could or could not do." (Shaw Dep. at 41.) Plaintiff contends that he was upset by the harassment. During his shift, Plaintiff brought his concerns to Mr. Murphy, who told Plaintiff that he was unaware that the co-workers had been making these statements. (Shaw Dep. at 39, 52.) Mr. Murphy avers that "Mr. Shaw called me aside about 03:00 and said the guys were picking on him about something I had said, telling him he was to[o] old to do his job. I told [Mr. Shaw] I was sorry if this happened and I would get with [the] employees and tell them to stop. Mr. Shaw told me it wasn't that bad, he could handle it and for me not to say anything or worry with it. He just wanted to let me know and that these guys would take anything you say and blow it out of proportion." (Murphy Aff. at Para. 6.)

Plaintiff worked through the end of his shift on November 19, 2003, and then later went to visit his doctor. Plaintiff ultimately stayed out of work on sick leave through January 8, 2004, and then annual (vacation) leave through January 31, 2004. Plaintiff made contact with an EEO counselor on December 1, 2003, and Plaintiff subsequently filed an EEO charge describing the events of November 19, 2003. Plaintiff had not yet retired and was still an employee of the Postal Service at the time he made contact with an EEO counselor, and he did not mention constructive discharge in his EEO complaint. Plaintiff's EEO complaint was ultimately

4

dismissed on the basis that the isolated incident of alleged harassment by co-workers did not create a hostile work environment or result in any adverse employment action.

After exhausting his leave, Plaintiff retired from the Postal Service effective January 31, 2004. Plaintiff contends that he was constructively discharged and that he "just decided to go ahead and retire" due to the age-based discrimination and harassment. (Shaw Dep. at 14.) After Plaintiff's EEO complaint was dismissed, Plaintiff filed the present lawsuit alleging constructive discharge and hostile work environment based on age in violation of the ADEA.[1]

## II. DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

### A. Standard of Review

Defendant has moved to dismiss or for summary judgment. Because the parties have submitted and the Court has considered matters outside the allegations of the complaint, the motion will be evaluated as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Pursuant to Rule 56, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Rule 56(c) mandates

---

[1] Plaintiff has also made allegations of negligent training/supervision and of intentional and/or negligent infliction of emotional distress. However, Plaintiff has not pursued any claims under the Federal Tort Claims Act or Federal Employment Compensation Act. In his Response Brief, Plaintiff contends simply that he is pursuing his claims pursuant to the ADEA, and therefore need not have filed any tort claim. (Resp. Brief at 7.) As such, to the extent Plaintiff originally asserted any state tort claims, those claims have been abandoned, and the Court will address Plaintiff's only remaining claim, which was brought pursuant to the ADEA.

5

the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The Court is not "'required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986) (quoting Schuylkill & Dauphin Improvement & R.R. Co. v. Munson, 81 U.S. (14 Wall.) 442, 448, 20 L. Ed. 867, 872 (1872)).

In considering a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party, in this case, Plaintiff, and accord that party the benefit of all reasonable inferences. Bailey v. Blue Cross & Blue Shield, 67 F.3d 53, 56 (4th Cir. 1995). Moreover, the Court should not grant a motion for summary judgment "'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'" Campbell v. Hewitt, Coleman & Assocs., 21 F.3d 52, 55 (4th Cir. 1994) (quoting Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir. 1967)). Nevertheless, a mere

6

scintilla of evidence is insufficient to withstand a motion for summary judgment. Anderson, 477 U.S. at 252, 106 S. Ct. at 2512. There must be evidence "on which the jury could reasonably find for the plaintiff." Id. With this standard in mind, the Court must evaluate the merits of Plaintiff's ADEA claim to determine whether summary judgment in favor of Defendant is proper in the present case.

    B.    Age Discrimination in Employment Act (ADEA)

The ADEA creates a cause of action for federal employees over the age of 40 who allege discrimination on the basis of age. See 29 U.S.C. § 633a. A plaintiff can prove an ADEA violation "(1) under ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue, or (2) under a judicially created proof scheme originally used in the Title VII context in McDonnell Douglas Corp v. Green . . . and subsequently adapted for use in ADEA cases." Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996) (citations omitted); see also Laber v. Harvey, – F.3d – (4th Cir., February 16, 2006) (recognizing use of proof schemes for age discrimination claims by federal employees). If a plaintiff attempts to present direct or circumstantial evidence of discrimination, the plaintiff must simply demonstrate that age was a consideration, or a motivating factor, in the decision to take adverse employment action against the plaintiff. Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991); see also Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003). If a plaintiff proceeds under the McDonnell Douglas scheme, the plaintiff has the initial burden to establish a prima facie case of age discrimination, that is, that he was a member of a protected class (over age 40),

7

that he was performing his duties satisfactorily, that he suffered an adverse employment action, and that similarly-situated younger employees received preferential treatment. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668; Burns, 96 F.3d at 731; O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312-13, 116 S. Ct. 1307, 1310, 134 L. Ed. 2d 433 (1996). The defendant may then present evidence of a legitimate, non-discriminatory reason for its employment decision, and the plaintiff may rebut this showing by demonstrating that the defendant's reasons were mere pretext for age discrimination. See Burns, 96 F.3d at 731; Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147, 120 S. Ct. 2097, 2108, 147 L. Ed. 2d 105 (2000). Regardless of the proof scheme used, the plaintiff must point to the existence of some "adverse employment action" that affected a term, condition or benefit of the plaintiff's employment. See Bristow v. Daily Press, Inc., 770 F.2d 1251, 1254-55 (4th Cir. 1985).

If a plaintiff has resigned from his position, the plaintiff may attempt to establish an "adverse employment action" by showing that he was constructively discharged. Constructive discharge occurs when "an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." Munday v. Waste Mgmt. of N. Am., Inc., 126 F.3d 239, 244 (4th Cir. 1997) (quotations omitted). To establish "constructive discharge," the plaintiff must show (1) that the employer intended to induce the employee to quit; and (2) the working conditions were so intolerable that "a 'reasonable person' in the employee's position

8

would have felt compelled to resign." Bristow, 770 F.2d at 1255. In evaluating a claim of constructive discharge, the Fourth Circuit has noted that:

> An employee may not be unreasonably sensitive to his working environment. . . . Thus, the law does not permit an employee's subjective perceptions to govern a claim of constructive discharge. Every job has its frustrations, challenges and disappointments; these inhere in the nature of work. An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers. He is not, however, guaranteed a working environment free of stress. The employment discrimination laws require as an absolute precondition to suit that some adverse employment action have occurred. They cannot be transformed into a palliative for every workplace grievance, real or imagined, by the simple expedient of quitting.

Bristow, 770 F.2d at 1255 (internal quotations omitted); see also Williams v. Giant Food, Inc., 370 F.3d 423, 434 (4th Cir. 2004) (noting that "'dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign'" (quoting Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994))).

A plaintiff may also attempt to state a claim under the ADEA by establishing the existence of a hostile work environment based on age. To make out a hostile work environment claim, the plaintiff must show that he is at least 40 years old, that he was harassed based on his age, that the harassment had the effect of unreasonably interfering with his work, creating an environment that was both objectively and subjectively hostile or offensive, and that he has some basis for imputing liability to his employer. See Burns v. AAF-McQuay, Inc., 166 F.3d 292, 294-95 (4th Cir. 1999); Crawford v. Medina Gen. Hosp., 96 F.3d 830, 834-35 (6th Cir. 1996); see also

9

Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998). Where there is no evidence tending to show any severe or pervasive harassment that created an objectively hostile or offensive environment based on Plaintiff's age, Plaintiff's hostile work environment claims should be dismissed. See Burns, 166 F.3d at 294-95; see also Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 371, 126 L. Ed. 2d 295 (1993) (noting that court should consider frequency, severity, threatening, and humiliating nature of conduct to determine "whether it unreasonably interferes with an employee's work performance"); Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 773 (4th Cir. 1997) (noting that when alleged conduct falls below the threshold of severe or pervasive harassment, allowing "claim to go to trial would countenance a federal cause of action for mere unpleasantness").

C. Application in the Present Case

In the present case, Plaintiff contends that he was over age 40, had been performing satisfactorily, and suffered an adverse employment action when he was harassed and constructively discharged. However, Defendant contends that Plaintiff has failed to show any adverse employment action and cannot establish a constructive discharge or hostile work environment based on the facts presented.

After reviewing the evidence, the Court concludes that Plaintiff has produced insufficient evidence to establish that he suffered any adverse employment action. First, with respect to Plaintiff's job assignments, the evidence shows that Plaintiff was given preferable, less strenuous assignments that he himself requested, and even demanded, based on his health conditions.

10

There is no evidence that Plaintiff was assigned to a certain area based on his age, or that he was prevented from receiving any assignment based on his age, other than the specific accommodations and assignments Plaintiff himself requested due to his "bad knee and bad back." Plaintiff cannot demand less strenuous assignments for health reasons and then contend that his supervisor's decision to give him the requested assignments is age discrimination. Therefore, the Court concludes that there is no evidence that Plaintiff received any adverse job assignments, and in fact, Plaintiff received the preferential assignments he himself had requested.

With respect to Plaintiff's claim of constructive discharge, the Court notes that minor teasing by colleagues during a single shift as described by Plaintiff is not sufficient to establish such intolerable working conditions that a reasonable person would have been compelled to resign. Plaintiff's deposition testimony reveals that Plaintiff's co-workers complained regarding Plaintiff's preferential assignments. At best, Plaintiff's evidence suggests that his supervisor may have defended Plaintiff's assignments by explaining that Plaintiff was "too old" and had "disabilities" and could not do the more strenuous assignments. Plaintiff's co-workers allegedly then "harassed" or "picked" at Plaintiff during a single shift regarding Plaintiff's preferential assignments. However, Plaintiff does not contend that any manager or supervisor was part of the teasing. In addition, Plaintiff concedes that Mr. Murphy's alleged statements that Plaintiff was "too old" and "disabled" were an attempt by Mr. Murphy to explain to Plaintiff's co-workers why Plaintiff was receiving the less strenuous, preferential assignments that Plaintiff had demanded. (Shaw Dep. at 39.) Based on all of the evidence presented, viewed in the light most

11

favorable to Plaintiff, the Court concludes that there is no evidence to indicate that this incident was so intolerable that "a 'reasonable person' in the employee's position would have felt compelled to resign." Bristow, 770 F.2d at 1255; see also Williams, 370 F.3d at 434 (noting that where a plaintiff "alleged that her supervisors yelled at her, told her she was a poor manager and gave her poor evaluations, chastised her in front of customers, and once required her to work with an injured back," the plaintiff had failed to establish "objectively intolerable working conditions necessary to prove a constructive discharge"). At most, Plaintiff's allegations in the present case are based on "[d]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions" which "are not so intolerable as to compel a reasonable person to resign." Carter v. Ball, 33 F.3d at 459.

In addition, Plaintiff has failed to present any evidence to show that Defendant intended in any way to force Plaintiff to quit. Plaintiff admits that his supervisor did not make any comments directly to him, and instead Plaintiff's complaints consist of what was repeated to him by his co-workers. (Shaw Dep. at 38-39.) Plaintiff contends that he told Mr. Murphy about the harassment, and that Mr. Murphy told Plaintiff that he was not aware of the harassment. (Shaw Dep. at 52.) Plaintiff does not contend that Mr. Murphy refused to intervene, and Mr. Murphy has submitted an affidavit indicating that he offered to put a stop to the harassment but Plaintiff refused, indicating that "he could handle it and for [Mr. Murphy] not to say anything or worry with it." (Def.'s Brief Ex. C.) Furthermore, Plaintiff has not submitted any evidence or contention refuting this statement or indicating that he informed his supervisors that the

12

harassment was "intolerable" or needed to be stopped. Even giving Plaintiff every possible inference, it is clear that Plaintiff did not give his supervisors an opportunity to address the situation. Instead, Plaintiff simply left at the end of his shift on November 19, 2003, and took sick leave and annual (vacation) leave until he decided to retire two months later. There is simply no evidence of any conduct, statement or action indicating any intent by Defendant to force Plaintiff to resign. Therefore, the Court concludes that, viewing the evidence in the light most favorable to Plaintiff, there is no evidence to support a claim of constructive discharge in this case.[2]

Finally, the Court notes that the single incident of alleged harassment by Plaintiff's co-workers is insufficient to establish a hostile work environment. To the extent that Plaintiff complains of his difficulties with Mr. Murphy that occurred prior to November 19, 2003, Plaintiff has conceded that Mr. Murphy's favoritism and supervisory style were not related to age, and were instead based on "personality." (Shaw Dep. at 36.) Plaintiff also concedes that Mr. Murphy's preferential treatment of certain employees was directed toward those who were not as "outspoken" and specifically, and understandably, those that did not "make fun of him." (Shaw Dep. at 36, 48.) Thus, any alleged "harassment" by Mr. Murphy prior to November 19, 2003, was not based on age. Moreover, even if the Court considers the alleged "harassment" by

---

[2] The Court notes that Defendant also contends that the constructive discharge claim should be dismissed because Plaintiff did not specifically refer to "constructive discharge" in his EEO complaint. However, because the Court finds that there is no evidence of constructive discharge in any event, the Court need not consider this alternative argument.

Mr. Murphy prior to November 19, 2003, the Court concludes that it is not sufficient to support the existence of a hostile work environment.

The Court therefore concludes that Plaintiff has failed to present evidence of any adverse job assignments, constructive discharge, hostile work environment, or any other adverse effect on the "terms, conditions, or benefits" of his employment to establish a claim under the ADEA. Therefore, Defendant's Motion for Summary Judgment will be granted, and this case will be dismissed.

III.  CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment [Document #10] will be GRANTED and this case will be DISMISSED. An Order and Judgment consistent with this Memorandum Opinion will be filed contemporaneously herewith.

This, the 14th day of March, 2006.

_____
United States District Judge